**In re AMERICAN DEVELOPMENT CORPORATION, a California corporation, Debtor.**

**Bankruptcy No. SA 86–04702 JR.**

United States Bankruptcy Court, C.D. California.

Jan. 20, 1989.

Dee Ann Dugan, Staff Atty., Office of the U.S. Trustee, Santa Ana, Cal., for trustee.

Todd C. Ringstad of Lobel, Winthrop & Broker, Irvine, Cal., Lael B. Stabler, Huntington Beach, Cal., for debtor.

Thomas C. Holman of Pettit & Martin, San Francisco, Cal., for FSLIC.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Debtor asks for authorization to transfer all of its assets to a wholly-owned subsidiary, Multistate Management, Inc. ("MMI"), a California corporation, pursuant to the provisions of § 363 of the Bankruptcy Code (the "Motion"). The Federal Savings and Loan Insurance Corporation ("FSLIC"), as Receiver for American Diversified Savings Bank ("ADSB"), a major creditor in this case, opposes the Motion. I heard the Mo-

tion on November 21, 1988 and took it under submission to consider whether in light of the evidence and arguments of counsel debtor should be allowed to spin off its assets to MMI and fund MMI's future operations.

## JURISDICTION

This court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF FACTS

Debtor commenced this Chapter 11 case in August 1986. At the time, it was managing over 100 commercial and residential real estate properties owned by subsidiaries of ADSB or limited partnerships where an ADSB subsidiary was the general partner (the "ADSB Properties"). After extensive litigation, American Development Corporation ("ADC") relinquished management of the ADSB Properties according to my finding that the management contracts on the ADSB Properties had been terminated prior to the filing of the bankruptcy case.

ADC currently manages three properties owned by limited partnerships in which Mr. Ranbir Sahni is a general partner (the "Sahni Properties"). These partnerships intend to sell the Sahni Properties to syndicators. According to Mr. Lester G. Day, Chief Executive Officer and President of ADC, the management agreements on the Sahni Properties are terminable upon sale. Debtor argues that it will be difficult to enter into new contracts with the syndicators to manage the Sahni Properties while ADC is in bankruptcy.

Day also declares that because ADC is in bankruptcy, it has been unable to obtain new business. For example, it has been unsuccessful in obtaining a contract to manage the Park Parthenia project for the City of Los Angeles.

Debtor asserts that by transferring its assets to MMI, MMI should be able to successfully negotiate management contracts on the Sahni Properties and management contracts on other properties. In effect, it is debtor's belief that it cannot develop new business while in bankruptcy, but MMI should be successful.

Debtor, therefore, proposes to transfer all of its assets to MMI and capitalize MMI at $100,000. It also proposes to make periodic loans to MMI to cover any operational deficits. The employees of ADC would become the employees of MMI.

Debtor contends that the creditors of the estate will not be harmed by this transaction. The transfer of assets to MMI is subject to MMI's agreement that it will provide monthly operational reports to the United States Trustee and the application of §§ 363 and 364 of the Bankruptcy Code to any transfers and financings.

FSLIC opposes the Motion arguing that debtor should propose a plan of reorganization rather than spinning off its assets to MMI. It contends that the transaction will harm creditors of the estate by subordinating them to creditors of MMI and making it impossible for creditors to execute against the assets of MMI in order to satisfy their claims. Furthermore, the FSLIC asserts there is no authority in the Bankruptcy Code to permit this transaction.

## DISCUSSION

■ Some preliminary issues need to be decided. Debtor states that it is asking for court permission to take this action pursuant to § 363(b) despite its belief that this transaction could be considered a transaction in the ordinary course of business and, therefore, a matter outside the review of this court. A transfer of all the assets of an entity to a subsidiary is not a matter in the ordinary course of business.

■ FSLIC contends that § 363(b) is inappropriate because this does not involve a

"use, s[a]le, or lease, other than in the ordinary course of business". I agree. I do not believe § 363 was intended to apply to the capitalization of a subsidiary by debtor.

■ To support its authority to do this transaction, debtor cites *In re Prudence Co., Inc.*, 14 F.Supp. 249 (E.D.N.Y.1936), a case decided long before the enactment of the Bankruptcy Code. In *Prudence*, the trustee sought to organize a corporation to act as a broker to obtain insurance for real property that the debtor owned. The new corporation was to be capitalized at 200 shares with a par value of $100 each. The trustee sought authorization to subscribe and pay for ten shares of the corporation's stock at an expenditure of $1,000. The court approved the request absent any opposing authority and deferring to trustee's business judgment that the new corporation would spin off income to the estate to benefit creditors and make a plan of arrangement possible. *Prudence*, therefore, supports debtor's argument that its proposal is permissible. Debtor's proposal, however, is substantially different than the one in *Prudence*. The trustee's minor investment in *Prudence* pales compared to the transfer of all debtor's assets to MMI.

The other case cited by debtor is in *Matter of Southern Biotech, Inc.*, 37 B.R. 318 (Bankr.M.D.Fla.1983). In that case debtor's chapter 11 trustee sought to purchase a business that would operate a plasmapheresis program similar to a program previously operated by the debtor. The court determined that there was nothing in the Code that deals with the subject directly or indirectly. Since there was no prohibition against the action, the court followed the reasoning in *Prudence* and concluded that the transaction was legally permissible. The court then looked at the economic soundness of the transaction and the consequences of not approving the order. It recognized that there was a possibility that the trustee could spend cash of the estate for stock that could ultimately turn out to be worthless. However, it also recognized that the trustee did not have any other reasonable alternative to reorganize the debtor. 37 B.R. at 323. The objecting party was an administrative claimant who obviously preferred that available cash be used to satisfy his claim rather than to purchase stock which may or may not have value. After balancing these concerns, the court allowed the trustee to consumate the transaction.

The FSLIC distinguishes *Southern Biotech* by pointing out that the transaction allowed the trustee to acquire assets in its operation rather than disposing of assets. It also emphasizes that the only objecting party was an administrative claimant who did not represent the interests of all unsecured creditors.

The FSLIC in its response cites *In re Public Service Co. of New Hampshire*, 90 B.R. 575 (Bankr.D.N.H.1988). In *New Hampshire*, debtor utility was a part owner of the Seabrook nuclear power plant and operated the power plant through a corporate division. Debtor proposed a transfer of management of the power plant to a separate corporation that would be controlled by the joint owners of the project. The Massachusetts attorney general and three citizens groups objected. They argued that a restructuring before a reorganization plan was premature, that the benefits of the proposal were largely speculative, and that the proposed restructuring would result in a loss of bankruptcy court jurisdiction to prevent certain low power tests at the plant.

The *New Hampshire* court rejected the debtor's argument that the decision to restructure its business was merely a question of the debtor's business judgment, finding that the proposal "involves a proposed restructuring of the debtor which clearly is out of the ordinary course of debtor's activity for reorganization purposes." *Id.* at 580. In disapproving the proposed transaction, the court stated:

> Considering the particular business transaction here involved, i.e., a restructing of the very entity in reorganization, I believe that an appropriate standard for approval or disapproval of the transaction by the reorganization court is whether good cause has been shown to imple-

ment the transaction at this state of this proceeding, i.e., does it have valid business reasons supporting it and does it make good sense in the overall context of the reorganization process? Phrased negatively, the standard might be whether the proposed transaction might improperly and indirectly lock the estate into any particular plan mode prematurely, and without the protection afforded by the procedures surrounding a disclosure statement and confirmation hearing, in a plan reorganization.

*Id.* at 581.

According to the FSLIC, debtor's proposal will lock the estate into a particular course of action without the creditor protections surrounding confirmation of a plan of reorganization. For this reason, it argues that the proposed transactions are premature and should not be approved. The FSLIC also argues that debtor has not shown sufficient business reasons to justify the proposed restructuring.

Based on the *Southern Biotech* and *New Hampshire* cases, I hold that debtor's proposed transaction is legally permissible. It would be absurd to limit a debtor in possession or a trustee operating a business to actions specifically authorized in the Bankruptcy Code. It was certainly not the intent of the drafters of the Bankruptcy Code to list all permissible activities.

The proposed transaction is certainly not in the ordinary course of business and requires my approval. Debtor has the burden of proof to persuade me that the proposed transaction is appropriate in light of its reorganization effort and should be approved.

■ I believe this court should weigh the following factors when it is asked by debtor to approve a transaction that is not covered by a specific provision in the Bankruptcy Code, that is not in the ordinary course of business, and that may have a significant impact on debtor's reorganization efforts: (1) Has the debtor satisfied the business judgment test by demonstrating good and sound business reasons for the proposed transaction? (2) Is the proposed transaction in the best interests of creditors? (3) Is the proposed transaction premature? (4) Does the debtor have other options available to reorganize? (5) Will the proposed transaction facilitate a plan of reorganization?

■ Debtor contends that the proposed transaction will benefit it by facilitating its opportunities to develop new business. It further contends that creditors are not adversely affected because the estate will own the stock and MMI will retain the assets subject to this court's review of any proposed transfer of assets or refinancing.

In reviewing the above factors, I am unable to approve debtor's proposed transaction. I am not convinced that parties will deal with MMI, but not debtor. It may seem obvious to debtor that this is the case, but I need convincing evidence of this fact. Debtor failed to prove its assumption.

By transferring the assets to MMI, creditors of this estate will not have a direct claim against those assets. The estate will hold stock that may have little value in the market place. Debtor fails to describe the management of MMI. MMI could take actions outside the ordinary course of business that are not subject to this court's review. Despite these creditor concerns, there may be sufficient countervailing benefits to creditors to justify approval of this proposed transaction. Debtor, however, has not convinced me by argument and evidence that its proposal is in the best interests of creditors.

Debtor's proposed transaction may be premature. I have not seen a proposed plan of arrangement or evidence that this proposal will facilitate an acceptable plan of arrangement. The proposed transaction appears to foreclose other alternatives for reorganization. Because the various options for proposing a plan were not discussed, I cannot conclude that the restructuring will not foreclose debtor from viable and preferable options to reorganize.

Lastly, absent any attempt to disclose debtor's plans for reorganization, I am unable to determine whether the restructur-

ing facilitates or hinders debtor's prospects for a successful reorganization.

In summary, after weighing the relevant factors previously outlined, debtor has failed to carry its burden of persuading me by the evidence that this dramatic restructuring is justified. Accordingly, the motion is denied.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within memorandum opinion shall constitute my findings of fact and conclusions of law.